23   203
d53   471

# WHEELING.

ADAMS *et als. v.* TRUSTEES, &C., OF TOWN OF CLARKSBURG.

Submitted June 11, 1883—Decided December 15, 1883.

The trustees and commonalty of the town of Clarksburg in the county of Harrison filed their petition in the county court of said county, under the provisions of act of the Legislature passed on the 29th of December, 1875, against "*T. H. A.*" *and* others, seeking to condemn a parcel of land belonging to them, for a public alley for the use of said town; upon this petition, notice that application for the appointment of commissioners would be made to the said county court on the 13th of June, 1876, was duly published in a newspaper in said county for the period and in the manner prescribed in the sixth section of said act, but was *never posted* as required by said section, nor was there any personal service of said notice upon said land-owners, neither had they ever appeared generally to the said petition, nor in any manner, waived their right to personal service of such notice; the said county court, on the 15th of June, 1876, appointed five commissioners to ascertain what would be a just compensation to the said land-owners for the land so to be taken, who made their report to the said court at a subsequent term thereof, when said land-owners appeared and filed exceptions thereto. *First*—Because the said order appointing said commissioners was made on the 15th instead of the 13th of June, 1876; and second, because the appointment of said commissioners was contrary to law, which exceptions the said county court overruled and confirmed said report. HELD:

I. That the said land-owners, not having been served with personal service of said notice, that such application would be made, and not having appeared generally to said petition

or in any manner waived their right to such personal notice, the said county court had no authority to docket said motion to appoint such commissioners.

II.  That the advertisement of said notice in a newspaper in the said county for the period and in the manner prescribed by sec. 6 of ch. 114 of the Acts of 1875, *without also posting said notice* in the manner prescribed by said sixth section of said act was insufficient to authorize the said court to hear the said petition.

III.  That the petitioner having elected to proceed against the said land-owners as non-residents, the said court had no authority to appoint such commmnissioners, even if said notice had been duly published and posted in the manner prescribed in said sixth section of said act. That in such a case, if the land-owners had been properly proceeded against as non-residents, and the notice to them had been duly published and posted as required by said sec. 6 of ch. 114 Acts 1875, the court should have directed such compensation to be ascertained by a *jury*, and not by commissioners.

IV.  That the said county court erred in overruling the said second exception of said land-owners to the said report, of said commissioners, and in confirming said report.

WOODS, JUDGE, furnishes the following statement of the case:

On the 15th of June, 1876, the trustees and commonalty of the town of Clarksburg, in the county of Harrison, a municipal corporation of this State, filed their application in writing in the said county against T. H. Adams, Susan H. Black, Annie E. McKinley and Sarah E. Adams, praying that a certain parcel of land owned by them and situated within the corporate limits of said town might be condemned for the purpose of opening an alley over the same for the use of the said town, and stating therein, that for the land so to be taken for the use aforesaid, it was willing to pay to said owners the sum of seventy dollars, and also praying for the appointment of commissioners to ascertain what will be a just compensation to the said owners for the said land so to be taken. The said corporation gave notice, that on the 13th of June, 1876, that being the second day of the June term of the county court of said county, it would make application in writing to the said court, for the appointment of such commissioners to ascertain said compensation for said land. No personal service of this notice was had upon any of said

owners, who seem to have been proceeded against as non-residents of said county, but the said notice was published for four successive weeks in the Clarksburg *Telegram*, a weekly newspaper published in said county. There is no proof that the said notice so published, was posted at the front door of the court-house of the said county for at least four weeks before the hearing of the said application. The only proof of that fact appearing in the record, is the affidavit of the publisher of said newspaper, who after making oath that the notice was published in said newspaper for four consecutive weeks, says in his affidavit, that the said notice *"was posted on the court-house door as prescribed by law."* On the 15th of June, 1876, in its order, noting the filing of said petition, the court says, "and it appearing to the court that notice by publication for four weeks successively in the Clarksburg *Telegram*, a newspaper printed in this county, of said application has been given to the said several parties aforesaid as required by law," it thereupon proceeded to appoint five commissioners, naming them, who were duly chosen and selected as provided in sec. 11 of ch. 114 of the Acts of the Legislature 1875, to ascertain what will be a just compensation, &c. The commissioners on the 11th of June, 1876, having been duly sworn for that purpose, afterwards made and returned their report in the form prescribed by law except that it was dated only on the — day of ——, 1876, whereby they ascertained the quantity and description of the land to be taken, and that fifteen dollars was a just compensation therefor to the said owners. On the 26th day of December, 1876, the said owners appeared in said court by attorney and filed the following exceptions to the report of said commissioners: "Because the appointment of said commissioners was contrary to law; because their report was not made in pursuance of law; because no notice was given to the land-owners of the time when the commissioners were to act; because the compensation was inadequate, and because the report was not dated." On the same day the said county court overruled all of said exceptions, confirmed said report and ordered the same to be recorded on the order book of said court, and that the said applicant be paid its costs out of said damages assessed by said commissioners.

From this judgment a writ of error and *supersedeas* was allowed by the circuit court of said county, which court afterwards on the 19th of June, 1878, by its judgment affirmed the said judgment of the county court and dismissed the said *supersedeas* at the costs of said appellants.

From the said judgment of the said circuit court, a writ of error and *supersedeas* has been allowed to the said appellants by this Court.

*A. L. Hustead* and *Robert White* for plaintiffs in error.

No appearance for defendant in error.

WOODS, JUDGE:

The appellants have assigned various grounds of error, in the said judgments, but from the view we take of this case it will be necessary to consider only the first and second errors assigned in the action of the county court, and of the circuit court in affirming its judgment.

The appellants insist first, that the county court erred in allowing said application to be *docketed* on the 15th, when the notice was given that the application would be made on the 13th of June. The application for the appointment of commissioners to ascertain the compensation to which the land-owner may be entitled for so much of his land as may be taken for public use, must be by a petition in writing filed in the county court of the county where the land lay, and it was required to show any fact necessary to be shown, to justify such taking of private property for public use, and this petition could be filed at any time, either before or after, and with or without notice, but before the court could act upon the application, the parties owning the land were entitled to at least ten days' notice by *personal service*, or if they were "*not then in the county*" the notice as to them was required to be given by advertisement, containing a specific description of the property in which they were interested, that was proposed to be taken, and stating the purpose to which it is intended to be appropriated, and the time and place at which a hearing would be asked for, upon said application, "which advertisement was required to be published

once a week for four successive weeks in some newspaper printed in the county, and also to be posted at the front door of the court-house of the county for four weeks at least before the hearing." Acts 1875 ch. 114 § 6.

The day on which the hearing is to be had must be specified in the notice, and the motion to hear the application cannot, without the consent of the land-owners, be made upon another day, and if not so made on that day, another notice will have to be given. We are therefore of opinion that the said county court erred in hearing said application on the 15th day of June, 1876.

The second ground of error relied on by the plaintiffs in error is, that the county court erred in appointing five commissioners instead of a jury to ascertain such compensation.

The taking of private property for public use, without the owner's consent, can only be justified for the uses, in the modes, upon the conditions and by the agencies prescribed by law for its appropriation. Whenever the private property of an individual is to be so divested by proceedings against his will, a strict compliance must be had with all the provisions of law, which are made for his protection and benefit, or the proceeding will be ineffectual. Those conditions must be regarded as conditions precedent, which are not only to be observed and complied with, before the right of the property owner is disturbed, but the party claiming authority under the adverse proceeding must show affirmatively such compliance. All the authorities concur in holding, that as private property can be taken for public uses, against the consent of the owner, only in such cases, and by such proceedings as may be specially prescribed by law, and as these proceedings are contrary to the course of the common law, and are in derogation of common right, they are to be strictly construed, and that the party who would avail himself of this extraordinary power, must fully comply with all the provisions of the law entitling him to exercise it. Cooley's Cons. Lim. ch. 15 sec. 528; *Nichols* v. *The City of Bridgeport*, 23 Com. 189; *Judson* v. *same*, 25 Conn. 426; *State* v. *Jersey City*, 1 Dutch. 310; *Harbreck* v. *City of Toledo*, 11 Ohio 318; *Benseley* v. *Mountain Lakes Water Co.*, 13 Cal. 306; *Gilmer* v. *Lime Point*, 19 Cal. 47; *Chicago & Alton*

*Railroad Co.* v. *Smith,* 78 Ill. 96. The statute under which all the proceedings in this case were had, before said county court, provided that, upon proper petition being filed, ten days' notice shall be *served on the owners* of the land, before the court could lawfully appoint such commissioners; in other words the owners were entitled to ten days' notice, and this was required to be personal, and not merely possible or constructive notice.

But the statute expressly provided that where the owner of the whole, or of any part of the real estate proposed to be taken, or *any of them,* are "not in the county," the notice as to them instead of being thus served (that is by personal service) may be given by advertisement "containing a specific description of the property in which they are interested, that is proposed to be taken and stating the purpose to which it is intended to be appropriated, and the time and place at which a hearing will be asked for upon the said application; and this advertisement must be published for four successive weeks in some newspapers, printed in the county ; and must also be *posted at the front door of the court-house of the county four weeks* at least before the hearing. Acts 1875, ch. 114, sec. 6.

In the case under consideration, there was no personal service of the notice of said application upon any of said owners, and it does not appear that any of them appeared to the said application at the time the court acted thereon, or in any other manner waived or lost his right to personal service, so as to authorize the county court to appoint said commissioner. On the contrary the said land-owners were treated and proceeded against as persons *"not in the county,"* at the time such notice was to be given. The notice as to them was prepared in exact conformity with the notice prescribed for owners "not in the county," and it was published by advertisement in a newspaper, for the period prescribed by law ; but there is no evidence that this notice was "also posted· at the front door of the court-house of Harrison county, four weeks at least before the hearing" of the application. It is true that the affidavit of W. F. Williams who proves the publication of the notice in the newspaper, also states that the "same was posted on the court-house door, as

prescribed by law," but in the absence of any proof to show *when*, or on what door of the court-house, or of what court-house, and in the absence of any certificate of the clerk of said court, or of any recognition by the court itself in its orders, that the said notice was posted, we are not at liberty to supply by mere conjecture, this essential prerequisite in these proceedings, without which the said county court, on June 15, 1876, was wholly unauthorized to act upon said application. It was not sufficient that the notice should be published by advertisement in the newspaper, in the manner prescribed, but it was essential that such notice should "also be posted at the front door of the court-house of said county for four weeks at least before the hearing," and this not having been done, the court could proceed no further until proper notice to the owners had been given. But as the applicant had elected to proceed against the plaintiffs in .error as "persons not in the county," and not by personal service of notice upon them, the county court had no authority in that case to appoint commissioners to ascertain what would be a just compensation for the land proposed to be taken; for by the last clause of section 11, of said chapter 114, it is expressly provided, that "if any one or more of the defendants be under the age of twenty-one years, or be *proceeded against as a non-resident*, the court shall order a jury as to such person." This provision of the statute is conclusive of the question under consideration. These owners were not in the said county, at the time said notice was to be given, they had not appeared generally to the application, nor in any other way waived their right to personal notice of the proceeding that was intended to deprive them of their land against their consent; they were proceeded against as non-residents, and therefore the court could not under such circumstances appoint such commissioners; their power to do so could only be called into action upon proof of at least ten days' personal service of notice on the land-owners, or their appearance and waiver of such notice. And so far as the appointment of commissioners was concerned, as to such owners as had been proceeded against as non-residents, it mattered not whether said notice had been duly published and posted or not; for if such publishing and posting had

been complete, the court could not appoint commissioners, but it was the duty of the court to order a jury to ascertain such compensation as to said owners, in the manner prescribed in sec. 14 of said ch. 114.

The county court having under these circumstances appointed commissioners to ascertain what would be a just compensation to the plaintiffs in error for that portion of their land proposed to be taken for a public alley for the use of said applicant; and the said commissioners having proceeded to make their said report, the county court erred in overruling the first exception of the plaintiffs in error thereto, and in confirming said report. For the same reasons the circuit court of Harrison erred in affirming the said judgment of said county court, and in dismissing the said writ of error and *supersedeas.* We are therefore of opinion that the said judgment of the circuit court of Harrison county rendered on the 19th of June, 1878, be wholly set aside, reversed and annulled; and this Court now proceeding to render such judgment as the said court ought to have rendered, it is considered that the said judgment of the said county court rendered on the 26th of December, 1876, be reversed and annulled, that the said first exception of the plaintiffs in error to the said report of said commissioners be sustained and that the said order of said county court made on the 15th of June, 1876, appointing said commissioners, and that all proceedings in the cause subsequent to the filing of said petition be, and the same are hereby, set aside, reversed and annulled, and the said petition is remanded to the said circuit court for further proceedings to be had thereon, according to law, the costs thereof to abide the final judgment of the said circuit court upon said petition. And it is further considered by the Court here that the plaintiffs in error recover against the defendant in error as well, their costs by them, about the prosecution of their said writ of error and *supersedeas* in the said circuit court, as their costs about the prosecution of their writ of error and *supersedeas* in this Court expended.

REVERSED.   REMANDED.