STATE OF WEST VIRGINIA BY THE STATE ROAD
COMMISSION, etc.

*v.*

THE HONORABLE JULIAN F. BOUCHELLE, *Judge, etc.*

(No. 10510)

Submitted September 25, 1952. Decided November 25, 1952.

LOVINS, JUDGE, dissenting.

BROWNING, JUDGE, not participating.

*John G. Fox,* Attorney General, *T. D. Kauffelt,* Assistant Attorney General and *Donald L. Schaffer,* Special Assistant Attorney General for relator.

*Martin C. Bowles* and *John H. Goad,* for respondents.

Riley, President:

The State of West Virginia by The State Road Commission, a corporation, invoking the original jurisdiction of this Court, filed its petition in prohibition against the Honorable Julian F. Bouchelle, Judge of the Circuit Court of Kanawha County, and R. H. Dunn and Janet A. Dunn, praying that a writ of prohibition be awarded it, suspending further prosecution of a certain proceeding in eminent domain, now pending in the Circuit Court of Kanawha County, entitled "The State of West Virginia by the State Road Commission of West Virginia, a corporation, v. R. H. Dunn and Janet A. Dunn, his wife, and Central Trust Company, a corporation, trustee," in which proceeding in eminent domain the circuit court, upon respondents' answer, ordered The State Road Commission to "amend its petition," so as to include a certain narrow strip of land, containing approximately 6549 square feet, running between the property presently sought to be taken in the proceeding in eminent domain and the southerly edge of U. S. Route No. 60, as that south edge was established in 1941.

The petitioner in the original petition in the instant proceeding in eminent domain sought to condemn certain lands owned by the defendants, R. H. Dunn and Janet A. Dunn, located along the southerly edge of U. S. Route No. 60, for the purpose of widening a bridge, commonly known as the "Davis Creek bridge," located on U. S. Route No. 60.

On May 26, 1952, an amended petition was filed in the proceeding in eminent domain which deleted the allegations concerning the purported interest of Central Trust Company, Trustee, and from paragraph eight thereof deleted the words "excepting so much thereof as is occupied by the public road now located thereon"; so that the paragraph reads: "Your petitioner further represents that the land proposed to be condemned is embraced in the description aforesaid and includes all the area within said boundaries."

To the original and amended petitions in the eminent domain proceeding the Dunns filed an answer, alleging that the highway as it existed before it was widened and the improvement was commenced was located upon a strip of land belonging to them, which had not been acquired by the State either by condemnation or otherwise, and that the applicant in the proceeding in eminent domain should not be permitted further to prosecute that proceeding, unless the amended petition was further amended to include such land illegally occupied by the highway.

To this answer the State of West Virginia by the state road commission interposed a demurrer, stating grounds in support thereof as follows: (1) The relief sought in the answer could not properly be granted in a proceeding in eminent domain; (2) if the defendants had any remedy it could only be had in a proceeding in mandamus; and (3) the answer as a matter of law failed to allege a proper defense to a proceeding in eminent domain.

Applicant filed a reply to this answer, which reply alleged that the public road constructed by applicant upon the present right of way of the highway was more than ten years prior to the institution of this proceeding in eminent domain; that the highway had been used as a public road by the public continuously and public moneys and labor expended thereon for more than ten years, so that under the provisions of Code, 17-1-3, the defendants are precluded from asserting title thereto. To that reply the defendants filed a demurrer.

On July 29, 1952, the circuit court entered an order reciting in detail the former proceedings had in the proceeding in eminent domain, which order overruled applicant's demurrer to the answer of the defendants, sustained defendants' demurrer to applicant's reply and ordered that applicant prepare and tender for filing, prior to September 9, 1952, a second amended petition or application, so as to include, in addition to the original tract of land described in the amended petition, the land which the answer alleges belongs to the defendants and under-

lies U. S. Route No. 60 before its widening, containing 6549 square feet and designated on a map filed as an exhibit with defendants' answer. This order recited that the circuit court by order on June 28, 1952, found that the applicant had a lawful right to take an easement in, over, and through the 6549 square foot-tract of land described in defendants'. answer, nominated thirteen disinterested freeholders, appointed five commissioners who were selected as provided by statute, ordered the commissioners to appear on September 9, 1952, to take and subscribe the oath prescribed by law, organize by appointing one of their number chairman, and one secretary, proceed to the location of the property sought to be prohibited in the proceeding, as set forth in the answer, and report to the court a just compensation for the land belonging to the defendants proposed to be taken, and damages to the residue.

As the rule in prohibition in the instant case was granted on September 2, 1952, returnable September 23, 1952, it does not appear in the record in the proceeding in eminent domain that the order of the circuit court of July 29, 1952, requiring the filing of a second amended petition by the applicant prior to September 9, 1952, has been complied with. If such second amended petition has been filed in the proceeding in eminent domain, it does not appear in the record before us. However, the fact that the order of the circuit court of July 29, 1952, requires the applicant to file a second amended petition so as to include lands claimed by the defendants, which were not included and described in the petition in eminent domain, presents the sole question which we have before us, which is: Does a circuit court, or the judge thereof, have the power in a proceeding in eminent domain to order an applicant to amend the application or petition to include land claimed to be owned by a defendant or defendants in a proceeding in eminent domain, which is not described in the application or petition?

Counsel have directed our attention to the question whether in a proceeding in eminent domain a defendant

may file a cross bill or an answer in the nature of a cross bill. On this point we are cited to *Johnson* v. *The Freeport and Mississippi River Railway Co.*, 111 Ill. 413, and *The Denver & Rio Grande Railroad Co.* v. *Griffith*, 17 Colo. 598. The holding in the Illinois case is based upon a statute which provides: "Any person not made a party may become such by filing his cross petition, setting forth that he is the owner or has an interest in property, and which will be taken or damaged by the proposed work; and the rights of such last named petitioner shall thereupon be fully considered and determined." 1872, April 10, Laws, 1871-72, page 402; Smith-Hurd Annot. Statutes, Ch. 47, Sec. 11; and the holding in the Colorado case is likewise based upon a statute to like effect, Vol. III-A, 1935, Colo. Stat. Ann., Ch. 61, Sec. 12. There is no provision permitting a cross bill or an answer in the nature of a cross bill in a proceeding in eminent domain in the statutory law of this State. Whether it was proper to file the defendants answer in the instant proceeding in eminent domain we need not decide, because the matters arising on that answer were merged in the order of the circuit court of July 29, 1952, so far as it required the applicant to include by a second amended petition the tract of 6549 square feet claimed by the defendants.

The jurisdiction of a circuit court over a proceeding in eminent domain is statutory, which statutes, under our practice, must be strictly construed. *McConiha* v. *Guthrie, Judge*, 21 W. Va. 134, 142.

The provisions of the statute which relate to the powers of a court in a proceeding in eminent domain are: West Virginia Code, 54-2-1, which reads:

"In any case in which property may lawfully be taken for a public use, application may be made by petition to the circuit court or the judge thereof in vacation, of the county in which the estate is situated, to appoint commissioners to ascertain a just compensation to the owners of the estate proposed to be taken. If a tract lies partly in one county and partly in another, the application in

relation thereto may be made in either county;" and Code, 54-2-2, which reads:

"The pleadings shall be in writing and shall be verified. The petition shall describe with reasonable certainty the property proposed to be taken, and may embrace one or more parcels of land where the ownership is the same. If an estate less than a fee is proposed to be taken, the petition shall describe with reasonable certainty the particular estate less than the fee which it is proposed to take, the name of the owner or owners thereof, the manner and extent of their respective interests. If there are any liens upon or conflicting claims to such real estate, the petition shall state the nature and amount of such liens and claims and the names and places of residence as of the persons who hold the same, so far as known to the petitioner. It shall also state the use to which the estate sought to be taken is intended to be appropriated."

As can be readily seen the above-quoted statutory provisions, which should be strictly construed under the holding in the *McConiha* case, do not disclose any delegation to a trial court, having jurisdiction of a proceeding in eminent domain, of power to require the applicant to amend the position so as to include property claimed by the owner of the property sought to be condemned, not embraced in the original petition. In so holding we do not hold that an applicant in a proceeding in eminent domain may not amend his petition voluntarily, nor is it necessary for us to do so, because the instant case involves an involuntary amendment of applicant's petition over the applicant's objection.

Though it is true the questions whether the proposed use of property is public or private and the ascertainment of just compensation to be paid to the owner are judicial in their nature, *State ex rel. United Fuel Gas Co. v. Max DeBerry, Judge, etc., et al.,* 130 W. Va. 481, pt. 1 syl., 43 S. E. 2d 415, the sole discretion to determine what quantity of land is necessary for a public use is vested in the agency resorting to eminent domain; and such discretion

will not be interfered with by the courts unless it has been abused. *State* v. *Horner,* 121 W. Va. 75, pt. 3 syl., op. page 80, 1 S. E. 2d 486; *Shelton* v. *State Road Commission,* 113 W. Va. 191, syl., 167 S. E. 444; *The City of Huntington* v. *Frederick Holding Co.,* 85 W. Va. 241, pt. 3 syl., 101 S. E. 461.

It follows from the foregoing that the Circuit Court of Kanawha County, though it had jurisdiction of the instant proceeding in eminent domain, exceeded its legitimate powers in ordering applicant to amend its amended petition so as to include the tract of 6549 square feet, which was not included in the original and amended petitions; and, therefore, the writ of prohibition prayed for should issue. "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." Code, 53-1-1.

The question whether under Code, 17-1-3, the defendants are barred from instituting a proceeding in mandamus to compel the State of West Virginia by the state road commission to institute a proceeding in eminent domain for the purpose of acquiring for the public use the strip of land of 6549 square feet claimed by the defendants, is not presented by this record.

For the foregoing reasons the writ of prohibition is awarded directed to the respondent Judge and the respondents, R. H. Dunn and Janet A. Dunn, and each of them, prohibiting them from litigating any question involving the tract of 6549 square feet, as a part of the land sought to be condemned in the instant proceeding in eminent domain.

*Writ awarded.*

LOVINS, JUDGE, dissenting:

In my opinion, the award of a writ of prohibition in this proceeding is unwarranted, therefore, I dissent.

R. H. Dunn is the owner of two lots or tracts of land situate south of the southern boundary line of Route 60, in the town of South Charleston, Kanawha County, West Virginia. Janet A. Dunn is the wife of R. H. Dunn.

Three parcels of land located along the southern boundary line of Route 60 in the town of South Charleston are involved in the proceeding in eminent domain hereinafter mentioned. One parcel consists of 6,549 square feet, extending approximately 1000 feet from the eastern boundary line of R. H. Dunn's land in a westerly direction to a concrete driveway and is about six feet wide. The 6,549 square feet will be hereinafter designated as Parcel 1.

There is another small parcel of land extending along across the lands of Harry and Argyle Staples who have an easement for access to the public road. It is unnecessary to make further mention of the easement on the Staples' land.

The other parcel is a long strip of land contiguous to and to the south of Parcel 1, extending from the eastern boundary line of the Dunn land, across the Staples land, across another lot belonging to R. H. Dunn, and will be hereinafter referred to as Parcel 2. Parcel 2, if and when acquired by the State Road Commission, will interfere with access to Parcel 1.

The State Road Commission instituted a proceeding in eminent domain to acquire Parcel 2, in which proceeding it developed that the Commission had not acquired title to Parcel 1, by deed or otherwise, notwithstanding that such land is now admittedly occupied by Route Number 60. Upon such fact being pleaded in an answer filed by the land owner, the Circuit Court of Kanawha County required that the petition in eminent domain be amended so as to include Parcel 1. The action of the trial court in requiring that amendment is prohibited by this court in the instant proceeding.

I think there are three valid reasons for refusing a writ of prohibition in this proceeding: (1) A writ of prohibi-

tion should not be granted to perform the function of a writ of error, (2) It was not error for the trial court to consider the acquisition of Parcel 1 in the eminent domain proceeding, (3) To hinder or prevent the land owner from receiving just compensation for his property is contrary to a right given him by the constitution. Discussing these questions in the order above stated:

Originally this court held that prohibition would not lie where another adequate remedy existed. *McConiha v. Guthrie*, 21 W. Va. 134; *Ensign Co. v. Carroll*, 30 W. Va. 532, 545, 4 S. E. 782. The modern holdings by this court are to the effect that regardless of the existence of other and adequate remedies, a writ of prohibition will lie. *Morris v. Calhoun*, 119 W. Va. 603, 608, 195 S. E. 341. Prohibition may be invoked also, although a writ of error is available, where it is shown that a trial court is about to commit palpable error. See, *Wolfe v. Shaw, Judge*, 113 W. Va. 735, 169 S. E. 325; *Lake O'Woods v. Wilhelm*, 126 W. Va. 447, 457, 28 S. E. 2d 915; *White Sulphur Springs v. Ripley*, 124 W. Va. 486, 20 S. E. 2d 794. But this extraordinary remedy retains, as a general proposition, its basic characteristic that it only issues in instances of usurpation and abuse of power when the trial court has no jurisdiction of the subject matter or parties, or having such jurisdiction, it exceeds its legitimate power.

In the instant proceeding, there is no doubt that the trial court has general jurisdiction of the subject matter and of the parties. *McConiha v. Guthrie, supra.* The question then arises, did the trial court exceed its legitimate power in requiring the petition to be amended so as to include Parcel 1. "If a court, in passing upon its own jurisdiction, decides only a question of law, the decision in its favor may be at its peril. But, if the question depends upon facts to be ascertained and determined, a wrong decision is mere error." *State v. Bland, Judge*, 89 W. Va. 600, 607, 109 S. E. 716. "Prohibition lies only in case of the inferior court's lack of jurisdiction in some form. Its lack of jurisdiction, if any, confers jurisdiction by prohibition upon this court. When it has jurisdiction, we

do not. Our decisions uniformly hold that prohibition cannot be awarded upon any ground save lack of jurisdiction in the inferior court." *State* v. *Bland, Judge, supra, Vanbuskirk* v. *Conley,* 111 W. Va. 293, 161 S. E. 574. See *Steamship Co.* v. *Hudson,* 93 W. Va. 209, 116 S. E. 511; *Gatrell* v. *Morris, Circuit Judge, et al.,* 98 W. Va. 34, 126 S. E. 343.

It is to be remembered that the only action of the trial court upon which the award of a writ of prohibition rests in this case is the action of the court in requiring a pleading to be amended so as to permit the taking of Parcel 1. Undoubtedly, the trial court had the authority and jurisdiction to formulate the pleading in the action of eminent domain, so as to permit inquiry into the peculiar and unusual circumstances relating to Parcel 1, as will be hereinafter shown. The principle that a petition in eminent domain may be amended is generally accepted. *City of Richmond* v. *Thompson's Heirs,* (Va.) 81 S. E. 105, 2 Lewis Eminent Domain, Third Edition, Section 561, where the following is stated: "The practice of allowing amendments is one which should find favor with the courts, since it saves time and expense, both to the public and to the parties interested."

Applying the rule relating to amendments, I think it is clear that a condemnor may amend his petition. That being true, there is no reason to prohibit a trial court, having general jurisdiction of a proceeding in eminent domain, from requiring an amendment of a petition, and in so doing, the court does not exceed its legitimate power. The rule as to amendments should be applied so that the trial court may have before it all judicial questions concerning the taking of land in question. It is clear to me that if Parcel 2 is taken, as it will be, Parcel Number 1 will be left in an unusual situation, being a long strip of land in which the land owner still has some rights, but of such dimensions and location, that it will be useless to him.

The right of a land owner to file an answer to a petition in eminent domain is clearly established in this jurisdic-

tion. *Electric Co.* v. *Beall,* 96 W. Va. 637, 123 S. E. 587, *Huntington* v. *Holding Co.,* 85 W. Va. 241, 101 S. E. 461. Of course, the answer should be confined to factual allegations relating to judicial questions presented in a proceeding in eminent domain.

Occupancy by the public road of Parcel 1 is a taking. *Lovett* v. *Gas Company,* 65 W. Va. 739, 65 S. E. 196. "In the exercise of eminent domain there are no exceptions to the literal enforcement of the provision, based upon the general understanding of the public when the constitutions were adopted. On the contrary, the provision is given a broad construction, and is called into play when a case comes within its spirit, even if the letter of the law is not disturbed. It is well settled that a taking of property within the meaning of the constitution may be accomplished without formally divesting the owner of his title to the property or of any interest therein. Any limitation on the free use and enjoyment of property constitutes a taking of property within the meaning of the constitutional provision." 2 Nichols on Eminent Domain, Third Edition, Section 6.1 [1]. See 6.21, *Id.* 18 Am. Jur., Eminent Domain, Section 133.

The only position that would justify disturbing the action of the Circuit Court of Kanawha County, is that the court only committed error. But, in my view, the action of the trial court does not constitute error.

In the courts opinion, the case of *McConiha* v. *Guthrie, supra,* is cited for the proposition that the statute authorizing proceeding in eminent domain should be strictly construed. A cursory reading of that opinion readily discloses that the rule of strict construction of statutes relative to eminent domain, was applied and invoked in that case to prevent the respondent judge from taking or invading two dwelling houses, and the land on which they were situate, contrary to the provisions of the statute.

In the instant proceeding, the same rule is applied against the land owner and not to protect the rights to private property. *Bridge Co.* v. *Comstock,* 36 W. Va. 263,

275, 15 S. E. 69, *Adams* v. *Clarksburg*, 23 W. Va. 203. See *B. & O. R. R. Co.* v. *P. W. & Ky. R. R. Co.*, 17 W. Va. 812.

In the case of *Adams* v. *Clarksburg, supra*, the court, in the body of its opinion, made the following statement: "All the authorities concur in holding, that as private property can be taken for public uses, against the consent of the owner, only in such cases, and by such proceedings as may be specially prescribed by law, and as these proceedings are contrary to the course of the common law, and are in derogation of common right, they are to be strictly construed, and that the party who would avail himself of this extraordinary power, must fully comply with all the provisions of the law entitling him to exercise it."

The proposition stated in the courts opinion that it is discretionary with a condemnor to determine the quantity of land necessary for public use is ostensibly supported by the cases of *State* v. *Horner*, 121 W. Va. 75, 1 S. E. 2d 486; *Shelton* v. *Commission*, 113 W. Va. 191, 167 S. E. 444; *Huntington* v. *Holding Co., supra.*

In the *Shelton* and *Horner* cases, the land owners contended that the condemnor was taking too much land. In the proceeding here considered, the converse of that proposition is presented, in that the land owner is seeking to require the condemnor to acquire the title of the land which it has already taken and occupied. I do not think that the opinions of this court in the *Shelton, Horner* and *Holding Co.* cases are authority for the proposition that the State Road Commission may ignore its duty to condemn land already appropriated by it for the public use.

May a condemnor take land without acquiring title thereto; or paying a just compensation therefor, and then in a proceeding to condemn a contiguous parcel, resist an amendment to the petition filed by him, when it is clearly shown that to permit the taking of the second parcel, the owner of both will have no access to the first parcel and will receive no compensation therefor? The right of a land owner to just compensation for his property taken

for public use is a constitutional right superior to any right granted by legislative enactment.

It may be that in other times and countries, the sovereign could seize the property of its subjects at will and without compensation. But not so in this country.

The action of this court in granting this writ virtually permits the State Road Commission to take Parcel 1, and thus deprive the land owner of the use of his land and may prevent or hinder him from receiving a just compensation for the same.

The award of a writ of prohibition places upon the land owner the burden of resorting to the remedy of presenting his claim to the legislature on the ground that the state owes him a moral obligation, or a proceeding in mandamus. As to the remedy by mandamus, see *Childers v. Commissioner*, 124 W. Va. 233, 19 S. E. 2d 611.

I am aware of the statutory provision reading in part: * * * "Any road shall be conclusively presumed to have been established when it has been used by the public for a period of ten years or more, and public moneys or labor have been expended thereon, whether there be any record of its conveyance, dedication or appropriation to public use or not. * * *" Code, 17-1-3. I have grave doubts as to the validity of the code provision just quoted. I do not think that the lapse of time, the occupancy of land and the expenditure of moneys or the bestowal of labor by the public thereon, should deprive a property owner of the right to just compensation for property taken or damaged for public use, contrary to the provision of our organic law which provides in part. "Private property shall not be taken or damaged for public use, without just compensation; * * *." Constitution of West Virginia, Article 3, Section 9. See 29 C. J. S., Eminent Domain, Section 97, *Walton v. Green Bay W. & St. P. R. Co.*, (Wis.) 36 N. W. 10.

I would deny the writ of prohibition.